FILED
JUL -3 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSEPH I. EWEKA, )
   Plaintiff, )
)
v. ) Civil Action No. 1:12cv1055
)
HARTFORD LIFE AND ACCIDENT )
INSURANCE COMPANY, )
   Defendant. )

## MEMORANDUM OPINION

At issue in this Employee Retirement Income Security Act (ERISA)[1] action is defendant's threshold motion (i) to dismiss two of plaintiff's four asserted claims arising out of the termination of plaintiff's long-term disability benefits and (ii) to strike plaintiff's jury demand. For the reasons stated below, defendant's motion to dismiss must be granted in part and denied in part and plaintiff's jury demand must be stricken.

I.[2]

Only a brief recitation of the factual record is necessary for resolution of defendant's motion. Thus, the record reflects that from January 2006 until January 2008, plaintiff Joseph I. Eweka ("Eweka") was employed as a Home Furnishings Consultant with American Signature Furniture ("American Signature") in Newport News, Virginia. In connection with this employment, Eweka participated in an ERISA employee welfare benefit plan that provided

---

[1] 29 U.S.C. § 1001 *et seq.*

[2] The facts recited here are derived from the allegations set forth in plaintiff's lengthy *pro se* complaint and, as required, those allegations are accepted as true for purposes of the instant analysis. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (stating that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

1

group short-term and long-term disability insurance benefits pursuant to a policy ("the Policy") that was issued to American Signature by defendant Hartford Life and Accident Insurance Company ("Hartford").

On July 31, 2007, Eweka ceased active employment with American Signature for medical reasons related to his back, including degenerative disc disease and spinal stenosis. Shortly thereafter, in August 2007, Eweka filed a claim for short-term disability benefits under the Policy, which Hartford later approved in September 2007.

In January 2008, Eweka's employment with American Signature was terminated because he had not returned to work within the six-month limited disability period. Eweka thus applied for long-term disability benefits under the Policy in January 2008. He later provided Hartford with certain requested medical and employment information in support of his claim and Hartford eventually approved Eweka's claim for long-term disability benefits in March 2008.

Hartford continued to pay long-term disability benefits to Eweka pursuant to the Policy for more than a year, from March 2008 to mid-2009.[3] During this period, Hartford's representatives frequently called Eweka for verbal updates regarding Eweka's medical condition and to verify that he was at his residence. Also, Hartford periodically, both by telephone and in writing, requested updated medical information from Eweka to support Eweka's entitlement to continued long-term disability benefits. In response, Eweka provided Hartford with the requested updated medical documentation, including medical reports prepared in December 2008

---

[3] Although not necessarily pertinent to the questions presented here, the record further reflects that Eweka, at Hartford's direction, applied for Social Security Disability ("SSDI") benefits from the Social Security Administration. Eweka was approved for SSDI benefits in August 2008 and thereafter, the amount of his SSDI benefits, as well as the amount of his dependent SSDI benefits, was deducted from Hartford's monthly long-term disability benefit pursuant to the terms of the Policy.

and June 2009 by Dr. Richard Radna, a New York City surgeon who had performed Eweka's back surgery in 1992.

In July 2009, a Hartford investigator met with Eweka to conduct a home visit and personal interview. During the interview, Eweka was shown clips from two surveillance videos that had been taken by a private investigator at Hartford's direction. According to Hartford, these video clips captured Eweka engaged in activities that contradicted his self-reported medical limitations and his claimed inability to work in any occupation. Yet, Eweka conclusorily alleges that these video clips were "defective and manipulated" by Hartford. Compl. at 6. He further alleges that he asked the Hartford investigator to correct certain "errors and falsehoods" contained in the investigator's written report of the July 2009 interview, but that the Hartford investigator declined to do so. Compl. at 7.

Following the July 2009 interview, Hartford continued to investigate Eweka's entitlement to continued long-term disability benefits. Soon thereafter, Hartford learned that Eweka had previously been convicted of bank fraud in a federal court and was then—in the summer of 2009—still serving a period of supervised release.[4] Thus, in August 2009, Hartford contacted

---

[4] Although the existing record does not include any court documents concerning Eweka's prior criminal conviction, judicial notice may properly be taken of the public records associated with that case. See *Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (recognizing that a district court may take judicial notice of official public records). Thus, the public docket sheet in *United States v. Joseph Iyobosa Osamwonyi*, 3:03cr435 (E.D. Va.) reflects that on February 17, 2004, Eweka pled guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344, before Magistrate Judge Dennis Dohnal in the Richmond Division of the Eastern District of Virginia. Eweka was thereafter sentenced on this offense on May 7, 2004—by District Judge Robert Payne of the Richmond Division—to 15 months imprisonment, to be followed by 5 years of supervised release subject to various standard and special conditions. It also appears from the public docket sheet that Eweka is now being supervised in that criminal case by a Probation Officer in the Alexandria Division of the Eastern District of Virginia, who

Eweka's federal probation officer and advised the officer that Hartford was in the process of investigating Eweka for possible insurance fraud. At around the same time, Hartford also apparently notified the Virginia State Police of its ongoing investigation of the *bona fides* of Eweka's claim for benefits.

On or about October 5, 2009, Hartford notified Eweka that his long-term disability benefits had been terminated based on Hartford's determination that Eweka was no longer disabled under the terms of the Policy. According to Eweka, this termination decision was based solely on, as he put it, (i) the "defective and manipulated surveillance videos" taken by the Hartford investigator and (ii) the medical opinion of a doctor who never met or examined Eweka and who based his medical opinion solely on the "defective and manipulated videos." Compl. at 7-8.

Eweka appealed Hartford's termination decision on October 22, 2009 and contemporaneously requested a copy of his entire claim file. Hartford thereafter sent Eweka a copy of his claim file in December 2009, but omitted from the materials provided certain medical documents. Hartford also sent Eweka a letter in mid-January 2010 requiring that he undergo an independent medical evaluation to be arranged and scheduled by Hartford. This independent medical examination was later conducted by Dr. Winifred Bragg on January 29, 2010. According to Eweka, prior to the examination, Hartford required that he sign a document acknowledging that Dr. Bragg's medical findings would not be disclosed to him.

By letter dated March 1, 2010, Hartford denied Eweka's appeal of the termination of his long-term disability benefits. Again, Eweka claims that Hartford's decision in this regard was

---

advises that Eweka legally changed his surname from Osamwonyi to Eweka during his period of supervised release.

4

based solely on the "defective and manipulated surveillance videos" and alleged "inconsistencies." Compl. at 9. Eweka also claims that Hartford ignored "crucial objective medical evidence" supporting Eweka's continued disability. *Id.*

In September 2010,[5] Eweka sent another request to Hartford for his entire claim file. Hartford, in response, sent Eweka additional materials in October 2010 that Hartford represented comprised Eweka's "administrative record." Compl. at 11. But again, Eweka claims certain pertinent medical records were omitted from the materials provided to him, including a December 2008 medical report from Dr. Radna and Dr. Bragg's independent medical evaluation. Although Hartford eventually provided Eweka with a copy of Dr. Bragg's independent medical evaluation in August 2012—after Eweka had sent a third written request for such information—Hartford never provided Eweka with a copy of Dr. Radna's December 2008 report. According to Eweka, both of these medical reports are favorable to him and support his claim of continued disability.

In September 2012, Eweka filed the instant matter in federal court alleging that Hartford violated various provisions of ERISA in connection with the termination of his long-term

---

[5] The record reflects that Eweka was in federal custody from March to September 2010. As already noted, the existing record does not include any court documents concerning Eweka's prior conviction for bank fraud. Nonetheless, Eweka alleges in this regard that he was advised by his federal probation officer in February 2010 that a supervised release violation petition had been filed against him based on Hartford's reported insurance fraud investigation. Eweka alleges he appeared in federal court in Richmond, Virginia on March 12, 2010 for a supervised release violation proceeding, in the course of which he states he admitted that he had failed to report his insurance disability payments to his probation officer and also failed to make certain court-ordered restitution payments. Based on these admitted violations, Eweka alleges he was sentenced to serve six months in prison and an additional five years of supervised release. Eweka states he completed service of this six-month custody sentence on September 10, 2010. Eweka's allegations in this regard are essentially consistent with the information reflected on the public docket sheet associated with Eweka's 2004 bank fraud conviction. *See United States v. Joseph Iyobosa Osamwonyi*, 3:03cr435 (E.D. Va.); *supra* n. 4.

disability benefits pursuant to the Policy. Specifically, in Count One, Eweka contends that Hartford wrongfully terminated his long-term disability benefits, in violation of 29 U.S.C. § 1132(a)(1)(B). In Count Two, Eweka alleges that Hartford breached its fiduciary duties by (i) failing to send him certain requested medical records from his claim file in a timely manner and (ii) failing to rule on his appeal within the statutory timeframe, all in violation of 29 U.S.C. § 1132(c)(1)(B). In Count Three, Eweka alleges that Hartford interfered with his protected ERISA rights in several respects, in violation of 29 U.S.C. § 1140. And finally, in Count Four, Eweka seeks "monetary damages" pursuant to 29 U.S.C. § 1132(a)(3)(B)(i) based on an additional alleged breach of fiduciary duty related to the insurance fraud referrals made by Hartford to Eweka's federal probation officer and the Virginia State Police.

Now at issue is Hartford's motion to dismiss Counts Three and Four of Eweka's complaint, pursuant to Rule 12(b)(6), Fed. R. Civ. P., and to strike Eweka's request for a jury trial. Each of Hartford's arguments is separately addressed.

## II.

A threshold dismissal motion is governed by the familiar standard, namely that to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In this regard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.*, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . .." *Twombly*,

550 U.S. at 555. Moreover, a reviewing court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50.

### III.

Hartford first moves to dismiss Eweka's ERISA interference claim alleged in Count Three of the complaint. In support of its motion, Hartford primarily argues that the claim fails as a matter of law because liability for an ERISA interference claim is limited to employers and thus does not apply to a non-employer plan administrator or insurer such as Hartford.

Analysis of this question must properly begin with the express language of the ERISA interference provision. Thus, § 510 of ERISA—codified at 29 U.S.C. § 1140—provides, in pertinent part, that

> [i]t shall be unlawful *for any person* to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140 (emphasis added). It is true, as Hartford argues, that the "primary purpose behind § 1140 is to prevent an employer from taking action against an employee." *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 421 (4th Cir. 1993); *see also Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir. 1991) (noting that "the primary focus of § 510 is to 'prevent[] unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights'") (citation omitted). But Hartford's argument that § 1140 liability is limited to employers clearly fails given that § 1140 expressly and unambiguously applies to "any person," and not just to employers. 29 U.S.C. § 1140. Indeed, the Fourth Circuit has previously considered and rejected the precise argument raised by

7

Hartford here, noting that "[i]n light of the plain language of the section, we cannot agree with the defendants that Congress intended to limit those who could violate § 1140 to employers." *Id.* (citing *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992)).

Nor is Count Three subject to threshold dismissal on statute of limitations grounds, as Hartford contends. In this regard, although ERISA does not provide a specific limitations period for § 1140 interference cases, "courts look to the essence of the ERISA violation and apply the limitations period of the most analogous state cause of action." *Baradell v. Board of Social Services Pittsylvania County*, 970 F. Supp. 489, 493 (W.D. Va. 1997) (citing *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir. 1992), *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir. 1992)). Given this, Hartford argues that Eweka's interference claim is governed by Virginia's two-year wrongful discharge limitations period. This argument is unpersuasive. Indeed, because Eweka's interference allegations are not asserted against his employer, as occurs in the typical § 1140 case, his claim is not analogous to a state wrongful termination claim. Instead, in this instance, Eweka's allegations are more akin to a state claim for tortious interference with a contract, which, in Virginia, is subject to a five-year statute of limitations period given that the alleged injury is one to Eweka's property (i.e., his ERISA benefits) rather than to his person. *See* Va. Code § 8.01-243(B) (providing that "[e]very action for injury to property . . . shall be brought within five years after the cause of action accrues").[6] Thus,

---

[6] There appears to be some disagreement among the Virginia circuit courts concerning whether a claim for tortious interference with a contract involves either (i) an injury to property that is thus governed by Virginia's five-year statute of limitations set forth in Va. Code § 8.01-243(B), *see supra*, or (ii) a personal injury governed by Virginia's two-year limitations period set forth in Va. Code § 8.01-243(A) (providing that "[u]nless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action

because Eweka filed his complaint well within the applicable five-year limitations period, Hartford's argument that Count Three is time-barred must be rejected.

But this does not end the analysis with respect to Count Three, for a plaintiff, to survive a threshold motion to dismiss, must also allege conduct on the part of the defendant that is actually proscribed by ERISA's interference statute. And in doing so, a plaintiff must satisfy the pleading requirements of *Iqbal/Twombly*. Thus, "[a] plaintiff must ... show more than the mere denial of a claim to establish that an insurer has acted with the intent of interfering with a future right under 29 U.S.C. § 1140." *Custer*, 12 F.3d at 422. A plaintiff's allegations must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). In this regard, it is clear that a reviewing court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50. It is equally clear that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . .." *Twombly*, 550 U.S. at 555.

---

accrues"). Yet, there seems to be no sound basis for this disagreement among Virginia circuit courts given the Supreme Court of Virginia's recognition more than fifty years ago, in *Worrie v. Boze*, 198 Va. 533, 536 (1956), that "[i]t is well settled that the right to performance of a contract and the right to reap profits therefrom are property rights which are entitled to protection in the courts." And, although Virginia's statute of limitations provisions have been modified in some respects since 1956, there is no reason to believe that the general legal principle announced in *Worrie*—namely that a contract right is a property right—is no longer the law in Virginia. *See Handley v. Boy Scouts of America*, No. 16777-RF, 1992 WL 12024801, at *14-15 (Va. Cir. Cir. Oct. 16, 1992) (concluding that "the *Worrie* analysis would not be rendered moot by the 1977 amendment to the [Virginia] limitation statutes . . . [and] [t]his court therefore finds, consistent with *Worrie v. Boze, supra*, that the applicable statute of limitations for a tortious interference action is five years"); *Boy Blue, Inc. v. Zomba Recording, LLC*, Civil Action No. 3:09-CV-483-HEH, 2009 WL 2970794, at 3 (E.D. Va. Sept. 16, 2009) (where the court "agree[d] with the other federal courts that have considered this question and concluded that a claim of tortious interference of contract is an injury to property that is governed by Virginia's five-year statute of limitations").

Here, a careful review of Eweka's prolix *pro se* complaint reveals that he has not alleged facts related to prohibited interfering conduct on the part of Hartford sufficient to survive threshold dismissal under *Iqbal/Twombly*. Moreover, this result is mandated not only with respect to the specific allegations included in Count Three of Eweka's complaint, but also with respect to Eweka's additional allegations included elsewhere in the complaint which, liberally construed, could arguably relate to the interference claim alleged in Count Three. Each of Eweka's interference-related allegations is addressed in turn.

In the text of Count Three, Eweka includes only two allegations to support his claim that Hartford interfered with his ERISA rights in violation of 29 U.S.C. § 1140. Specifically, Eweka first alleges that "the Defendant's failure to provide Dr. Bragg's report to the Plaintiff as requested, pursuant to 29 U.S.C. § 1132(c)(1)(B), is a violation of this provision." Compl. at 22-23. As Eweka appropriately acknowledges, an administrator's failure to supply requested information to a plan participant is governed by a separate provision of ERISA, namely 29 U.S.C. § 1132(c)(1)(B).[7] Indeed, the precise allegation included in Count Three concerning

---

[7] That provision provides, in pertinent part, as follows:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

Hartford's alleged failure to provide Eweka with a copy of Dr. Bragg's report already forms the basis for one of Eweka's breach of fiduciary claims alleged in Count Two.[8] Simply put, therefore, Eweka's allegation in this regard is expressly governed by § 1132(c)(1)(B), not by § 1140, and will be adequately addressed in the context of Count Two, which has not been challenged under Rule 12(b)(6), Fed. R. Civ. P.

The only other substantive allegation included in the text of Count Three in support of Eweka's § 1140 interference claim against Hartford is the following:

> Defendant gave the U.S. Probation Office and the Virginia State Police two Insurance Fraud Referrals, which the Defendant knew to be false or should have known that they were false, with the hope and intention that Plaintiff would be sent to prison for a long time and thereby, rendering Plaintiff unable to file a civil lawsuit against the Defendant within the statue [sic] of limitations period. Therefore, Defendant's conduct was self-serving to improve its bottom line.

Compl. at 22-23.

To begin with, it is important to note that it is entirely appropriate for a plan administrator to report suspected insurance fraud to a law enforcement agency if the administrator has a good faith belief that a plan participant is engaging in such fraud; indeed, it may arguably be viewed as

---

[8] Count Two provides, in pertinent part, as follows:

> Plaintiff seeks monetary damages to redress Defendant's breach of fiduciary duty, pursuant to § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B) . . . Defendant failed repeatedly to provide . . . Dr. Bragg's medical reports as requested by Plaintiff. Defendant was required to provide the requested information within 30 days from March 01, 2010, but Defendant did not provide Dr. Bragg's report until August 24, 2012; thereby breaching its fiduciary duty.

Compl. at 22.

11

a breach of fiduciary duty to the plan as a whole for an administrator not to do so. Here, however, Eweka argues that Hartford did not have such a good faith belief of suspected insurance fraud. Instead, Eweka alleges that Hartford made the insurance fraud referrals to his federal probation officer and the Virginia State Police knowing those referrals to be false, "with the hope and intention that Plaintiff would be sent to prison for a long time" and thereby prevent Eweka from filing a civil lawsuit against Hartford within the applicable statute of limitations period. Compl. at 22-23.

With respect to this particular allegation, it should first be noted that Eweka is mistaken insofar as he suggests that individuals who are in prison are unable to protect their legal rights by filing civil lawsuits in the court system; prisoners do so every day. But more importantly, Eweka's claim in this regard fails under the pleading requirements of *Iqbal/Twombly*, as he has failed to include any additional factual allegations in the complaint to render the claim facially plausible. *See Iqbal*, 129 S. Ct. at 1949 (recognizing that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). In other words, without additional supporting factual allegations, Eweka's claim that Hartford made the insurance fraud referrals to his federal probation officer and the Virginia State Police knowing those referrals to be false and with the intent to prevent Eweka from exercising his ERISA rights in a timely manner is nothing more than Eweka's own subjective speculation. Such speculation is clearly insufficient under *Iqbal/Twombly* and Eweka's claim in this regard must therefore be dismissed.

Finally, although they are not expressly included in the text of Count Three, several additional allegations appear elsewhere in Eweka's complaint that arguably pertain to his § 1140 interference claim and that will thus be addressed here given the liberal construction afforded

pleadings submitted by *pro se* litigants. Those additional interference-related allegations are as follows:

- "[d]efendant unreasonably and discriminatorily subjected Plaintiff to unwarranted surveillance, just months after Plaintiff's benefits were initially approved, through Defendant's use of "unknown caller" telephone monitoring, frequent requests for medical updates, telephone interviews, and private investigator activities; which are inconsistently applied to similarly situated claimants...." Compl. at 24.

- defendant "manipulated" video surveillance tapes taken of plaintiff by the private investigator and then "relied solely on the defective and manipulated surveillance videos and the opinion of Dr. Awasthi" to support its decision to terminate plaintiff's long-term disability benefits. "Dr. Awasthi has never met nor examined the Plaintiff . . . [and] Dr. Awasthi also relied solely on the defective and manipulated videos in rendering his opinion." Compl. at 6, 7, 8, 9, 24, 26.

With respect to the first of these two additional allegations, it is again important to note that a plan administrator is clearly entitled to investigate a participant's claim for benefits and indeed, may be obligated to do so in certain circumstances. And in pursuing an investigation, a plan administrator may use any legal and reasonable means for doing so, including telephone calls, surveillance and interviews. Just as a plan administrator's "mere denial of a claim" cannot serve as the basis for an ERISA interference claim, so, too, routine, reasonable investigatory steps taken by a plan administrator cannot serve as a basis for such a claim. *Custer*, 12 F.3d at 422 (recognizing that "[a] plaintiff must . . . show more than the mere denial of a claim to establish that an insurer has acted with the intent of interfering with a future right under 29 U.S.C. § 1140"). Moreover, Eweka's belief that Hartford's surveillance and investigation tactics were "unwarranted" in this instance is just that, namely his own subjective belief. Finally, although Eweka alleges that Hartford's investigatory tactics are "inconsistently applied to

similarly situated claimants," his allegation in this regard is again merely speculative and not supported by any additional factual allegations sufficient to render the allegation facially plausible. *See Twombly*, 550 U.S. at 555 (providing that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Eweka has not, for example, identified a single comparator or alleged any facts to support his allegation that he was somehow singled out or discriminated against by Hartford in this instance; nor has Eweka alleged any facts to support his claim that Hartford investigates claims submitted by plan participants in a discriminatory or inconsistent manner. For these reasons, Eweka's allegation in this regard is insufficient under *Iqbal/Twombly* and simply cannot serve as a supporting basis for his § 1140 interference claim against Hartford.

The same is true of Eweka's allegation that Hartford somehow "manipulated" the surveillance videos taken by the investigator and then relied on those "manipulated and defective" videos to support its decision to terminate Eweka's long-term disability benefits. Compl. at 6, 7, 8, 9, 24, 26. Indeed, Eweka has failed to include any additional factual allegations sufficient to render this allegation facially plausible, as opposed to merely speculative. For example, no factual allegations are included in the complaint concerning how or by whom the surveillance videos were allegedly manipulated or in what respect the videos were defective. And without such additional supporting factual allegations, Eweka's claim that the surveillance videos were somehow manipulated is nothing more than Eweka's own speculation. As such, this allegation, like the previous allegation, does not satisfy the pleading requirements of *Iqbal/Twombly* and cannot serve as a supporting basis for Eweka's § 1140 interference claim against Hartford. *See Twombly*, 550 U.S. at 555 (providing that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level").

In sum, therefore, Eweka's allegations in support of his § 1140 interference claim—both those expressly included in the text of Count Three and those included elsewhere in the complaint—do not pass muster under *Iqbal/Twombly* and Hartford's motion to dismiss Count Three must be granted. Eweka will nonetheless be provided an opportunity to file an amended complaint realleging a § 1140 interference claim against Hartford, but only if he is able to do so consistent with the pleading requirements of *Iqbal/Twombly* and Rule 11, Fed. R. Civ. P.[9]

## IV.

Hartford next moves to dismiss Count Four of the complaint on the ground that it seeks legal, rather than equitable relief pursuant to 29 U.S.C. § 1132(a)(3). In Count Four, Eweka alleges that Hartford breached its fiduciary duty by making allegedly-false insurance fraud referrals to Eweka's federal probation officer and the Virginia State Police. Eweka alleges that this breach of fiduciary duty caused him "great pains, humiliations, suffering, loss of freedom, and emotional distress . . . [and] also resulted in Plaintiff being incarcerated for six months and placed on supervised release for 4 years and six months." Compl. at 24. And significantly, as a result of Hartford's alleged breach of fiduciary duty asserted in Count Four, Eweka seeks an

---

[9] Rule 11 provides, in pertinent part, that

> [b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . ..

Rule 11(b)(3), Fed. R. Civ. P. Rule 11 further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any . . . party that violated the rule or is responsible for the violation." Rule 11(c)(1), Fed. R. Civ. P.

15

award of $5,000,000 in "monetary damages" pursuant to 29 U.S.C. § 1132(a)(3)(B)(i).

To begin with, Eweka's claim in Count Four is factually flawed for the obvious reason that the six-month custody sentence that he served in 2010 had nothing to do with Hartford's allegations. Instead, the record reflects the Eweka's six-month incarceration resulted from a federal judge's factual finding—and indeed Eweka's own admission made in the course of a supervised release violation proceeding—that he violated two specific terms of his period of supervised release, first, by failing to make court-ordered restitution payments, and second, by failing to provide truthful reports to the probation officer concerning his disability payments. *See supra* n. 5.

But, more fundamentally, Count Four fails on legal grounds. Specifically, § 502(a)(3) of ERISA—the provision on which Count Four is based—provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . ..

29 U.S.C. § 1132(a)(3) (emphasis added). Thus, by its express terms, § 502(a)(3) provides a plan participant or beneficiary with an avenue for an equitable remedy if he or she has no other adequate legal remedy under ERISA. Indeed, it has been recognized that Congress intended § 502(a)(3) "to be a 'catchall' ERISA provision that acts 'as a safety net, offering appropriate *equitable* relief for injuries by violations that § 502 does not elsewhere adequately remedy." *Estate of Spinner v. Anthem Health Plans of VA*, 589 F. Supp. 2d 738, 746 (W.D. Va. 2008) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)) (emphasis in original).

In light of this clear statutory language, the Fourth Circuit has held that a plaintiff is not

entitled to an award of compensatory damages under ERISA. *See, e.g., Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002) (stating that "[o]f course, [§] 502 limits a plaintiff to equitable relief, so [plaintiff] is not entitled to compensatory . . . damages"); *Griggs v. E.I. Dupont*, 237 F.3d 371, 384 (4th Cir. 2001) (recognizing that "[t]he phrase 'appropriate equitable relief' encompasses 'those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)'") (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). Nor does § 502(a) authorize an award of punitive damages. *See Darcangelo*, 292 F.3d at 195.

As already noted, in Count Four, Eweka seeks an award of $5,000,000 in "monetary damages" to compensate him for his alleged "great pains, humiliations, suffering, loss of freedom, and emotional distress" caused by Hartford's alleged breach of fiduciary duty. Compl., pp. 23, 27. Eweka's claim in this regard fails on its face, not only in light of the express statutory language limiting the remedies available under § 502(a)(3) to equitable relief, but also given the clear Fourth Circuit precedent prohibiting an award of compensatory or punitive damages under § 502(a) of ERISA. Hartford's motion to dismiss Count Four of the complaint must therefore be granted.

## V.

Finally, Hartford moves to strike Eweka's jury demand in this instance on the ground that there is no right to have equitable claims such as those presented here tried before a jury. Well-established Fourth Circuit precedent supports Hartford's argument in this regard. Indeed, the Fourth Circuit has previously held that under the common law of trusts—which applies given "congressional silence on this issue in the text of the statute"—"'proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a

jury.'" *Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 222 (4th Cir. 2005) (quoting *Berry v. Ciba-Geigy*, 761 F.2d 1003, 1007 (4th Cir. 1985)); *see also Neumann v. Prudential Ins. Co. of America*, 367 F. Supp. 2d 969, 980 n.16 (E.D. Va. 2005) (stating that "[i]t is well-settled in the Fourth Circuit that there is no right to a jury trial in proceedings to determine rights under employee benefit plans") (citations omitted). Hartford's motion to strike Eweka's jury demand must accordingly be granted.

## VI.

In sum,

(1) Hartford's motion to dismiss must be granted with respect to the § 1140 interference claim alleged in Count Three of the complaint, without prejudice to Eweka's right to file an amended complaint realleging the § 1140 interference claim if Eweka is able to do so consistent with the pleading requirements of *Iqbal/Twombly* and Rule 11, Fed. R. Civ. P;[10]

(2) Hartford's motion to dismiss the § 502(a)(3) claim alleged in Count Four of the complaint must be granted and that claim is accordingly dismissed with prejudice and without leave to amend; and

(3) Hartford's motion to strike Eweka's jury demand must be granted.

An appropriate order will issue.

T. S. Ellis, III
United States District Judge

Alexandria, VA
July 3, 2013

---

[10] Eweka is strongly advised to retain counsel in this matter and to review thoroughly the pleading requirements of both Rule 11, Fed. R. Civ. P. and *Iqbal/Twombly*.